UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROLINE G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-04640-JPH-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff seeks judicial review of the Social Security Administration's decision denying her petition for certain benefits. For the reasons that follow, the decision is REVERSED and REMANDED for further proceedings consistent with this order.

Plaintiff Caroline G. (the "Plaintiff") applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on March 30, 2015, alleging an onset date of October 1, 2010. [Dkt. 13-2 at 13.] Her application was initially denied on May 28, 2015, [Dkt. 13-4 at 2], and upon reconsideration on January 13, 2016, [Dkt. 13-4 at 9]. Administrative Law Judge Ronald Jordan (the "ALJ") conducted a hearing on October 5, 2016, [Dkt. 13-2 at 40–50], and held a supplemental hearing on August 9, 2017, [Dkt. 13-2 at 29–37]. The ALJ issued a decision on August 23, 2017, concluding that the Plaintiff was not entitled to receive SSI. [Dkt. 13-2 at 10.] The Appeals Council denied review on October 16, 2017. [Dkt. 13-2 at 2.] On

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

December 15, 2017, the Plaintiff timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Dkt. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
## BACKGROUND

The Plaintiff was 46 years of age at the time of her most recent application for SSI. [Dkt. 13-5 at 26.] She has a limited education and does not have any past relevant work. [Dkt. 13-2 at 20.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that the Plaintiff was not disabled. [Dkt. 13-2 at 21.] Specifically, the ALJ found as follows:

- At Step One, the Plaintiff had not engaged in substantial gainful activity[3] since March 30, 2015, the application date. [Dkt. 13-2 at 15.]

- At Step Two, she had the following severe impairment: chronic obstructive pulmonary disease ("COPD"). [Dkt. 13-2 at 16.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 13-2 at 17.]

- After Step Three but before Step Four, she had the RFC "to lift, carry, push or pull 21 to 50 pounds occasionally; stand and walk six hours in an eight hour day and sit six hours; frequent reaching in all directions; occasional balancing, stooping, crouching, crawling, kneeling and climbing stairs or ramps; no climbing ladders, scaffolds or ropes and no work around hazards such as unprotected heights or unguarded, dangerous moving machinery; no exposure to temperature extremes, unusually high levels of humidity or concentrated levels of dust, fumes, gases, strong odors or poor ventilation. This assessment is consistent with the ability to perform less than the full range of medium work as defined in 20 CFR 416.967(c)." [Dkt. 13-2 at 17.]

- At Step Four, there was no past relevant work to evaluate. [Dkt. 13-2 at 20.]

- At Step Five of the analysis, relying on vocational expert ("VE") testimony and considering the Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

in the national economy that she could have performed through the date of the decision. [Dkt. 13-2 at 20–21.]

## III.
### DISCUSSION

The Plaintiff presents several issues for review, beginning with the assertion that the ALJ did not develop a full and fair record as obligated to do for an unrepresented claimant. The Plaintiff contends that the ALJ did not get detailed testimony from the Plaintiff about her potentially having bad days that could affect her attendance at work, the specifics of her breathing treatments, and if she had problems with sleep. [Dkt. 20 at 13–15.] The Plaintiff contends that the ALJ failed to include limitations in the RFC finding accounting for absences, fatigue, and breaks. [Dkt. 20 at 15.] She argues that the ALJ failed to inquire of the VE as to her methodology used to determine the availability of jobs and her opinion on typical tolerances for unscheduled breaks. [Dkt. 20 at 15–16.] The Plaintiff also contends that "the ALJ's RFC does not pass the logical bridge test." [Dkt. 20 at 17.]

"A well-settled proposition regarding social security disability hearings is that '[i]t is a basic obligation of the ALJ to develop a full and fair record.'" *Thompson v. Sullivan*, 933 F.2d 581, 585–86 (7th Cir. 1991) (quoting *Smith v. Sec'y of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). When a claimant is without counsel, the ALJ's duty to develop the record is satisfied when the ALJ "scrupulously and conscientiously probe[s] into, inquire[s] of and explore[s] for all of the relevant facts." *Thompson*, 933 F.2d at 586 (citations omitted). *Pro se* claimants must furnish some medical evidence to support their claims, but the ALJ is required to supplement the record, as necessary, by "asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Generally, the Seventh

5

Circuit upholds a reasoned judgment of the Commissioner in deciding how much evidence to gather, even when the claimant lacks representation. *Id.* Accordingly, a "significant omission" must be established before the Commissioner can be faulted for having failed to assist an unrepresented claimant in fully and fairly developing the record. *Id.* (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). An omission is "significant" only if it is prejudicial. *Id.* "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). A claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ failed to consider. *Nelms*, 553 F.3d at 1098. "The ALJ does not act as counsel for [the] claimant, but as an examiner who thoroughly develops the facts." *Thompson*, 933 F.2d at 586 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)). "We are concerned not so much with whether every question was asked which might have been asked had Smith been represented by an attorney, as we are with whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith*, 677 F.2d at 830 (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. 1981)).

At the first hearing, the Plaintiff executed a waiver of her right to legal representation. [Dkt. 13-4 at 43.] Now represented by counsel in this judicial review action, she has not asserted that the waiver was invalid. *See Binion*, 13 F.3d at 245 (The claimant has the burden of proving that the record was inadequate, unless the ALJ does not obtain a valid waiver.).

The Court finds that the ALJ took substantial steps to develop the record as it pertains to the Plaintiff's primary issue, i.e., the COPD. The Plaintiff testified that her biggest issue was shortness of breath related to her COPD and that she had to have a resection surgery to remove a mass in her right lung, which resulted in a significant portion of that lung being removed. [Dkt. 13-2 at 42–43.] The ALJ inquired into her use of oxygen at night and the Plaintiff testified that

6

she also does breathing treatments four times per day, but that her treating provider had said she could cut that down to two treatments. [Dkt. 13-2 at 43.] The ALJ stated that a pulmonary function study was necessary to evaluate the Plaintiff's claim and that she had failed to attend scheduled examinations in the past. [Dkt. 13-2 at 44.] The Plaintiff testified that her lung functioning had been previously tested by her treating pulmonologist, Dr. Kabir, but that she had not had any updated testing in more than a year, which was around the time of her resection surgery. [Dkt. 13-2 at 45; *see* Dkt. 13-15 at 58–63 (The record contained what appears to be the most updated treatment records from Dr. Kabir.).] She testified about getting short of breath with walking half a block or showering and needing to take breaks cleaning her house. [Dkt. 13-2 at 45–46.] The ALJ let her know that he wanted to have an updated pulmonary function study completed. [Dkt. 13-2 at 47.]

Following the first hearing, the Plaintiff attended a consultative examination performed by Ami Rice, M.D., [Dkt. 13-15 at 65–69], which included updated pulmonary function testing, [Dkt. 13-15 at 70–73]. The ALJ received into the record a medical source statement from Dr. Rice assessing the Plaintiff's ability to do work-related physical activities. [Dkt. 13-16 at 2–8.]

The ALJ then held a supplemental hearing during which he obtained additional testimony from the Plaintiff about her ability to perform daily activities. [Dkt. 13-2 at 30–32.] The ALJ also obtained VE testimony, including asking the VE to assume the limitations that were opined by Dr. Rice. Dkt. 13-2 at 33. The VE testified that an individual with those limitations would be capable of performing unskilled, medium exertion work in the competitive economy, as a store laborer, baggage porter, and childcare attendant (and provided the number of jobs available in the nation for each). [Dkt. 13-2 at 34]. The ALJ then asked the Plaintiff if there was anything else she wanted

to tell him, and she volunteered that she was back up to needing "four breathing treatments a day." [Dkt. 13-2 at 35–36.]

The ALJ identified a significant evidentiary gap in the record and took reasonable steps to secure the additional evidence that was needed, including an updated consultative examination, pulmonary function testing, and an updated medical source statement, all at the SSA's expense. The record lacked any supportive medical source statement from the Plaintiff's treating providers. The ALJ noted in his decision that Dr. Rice had concluded based on her examination that the Plaintiff "could perform normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet, able to grasp objects and able to get on/off the table without assistance." [Dkt. 13-2 at 18 (citing Dkt. 13-15 at 68).] The ALJ also noted the results of the pulmonary function study on "October 25, 2016, FEV1 was 2.48 or 90% of predicted and FVC was 3.58 or 108% of predicted (Ex. 19F at 7)." [Dkt. 13-2 at 18 (citing Dkt. 13-15 at 70).] The ALJ gave "the greatest weight" to Dr. Rice's opinion and assessed a matching RFC, which formed the basis of the ALJ's denial of benefits. [Dkt. 13-2 at 19.]

The Plaintiff contends that the ALJ erred by failing to solicit more detailed testimony regarding several topics, including "bad days in relation to her multiple serious impairments," the time it takes her to complete her breathing treatments, side effects from her prescribed medication, possible problems sleeping, and the need for her to take naps because of fatigue. [Dkt. 20 at 14–15.] The Court agrees. While the ALJ adequately developed the record to assess the Plaintiff's primary condition—COPD—he failed to scrupulously develop the factual record with respect to her other conditions.

Over the course of two short hearings, each lasting no more than fifteen minutes, the ALJ did not ask the Plaintiff about any impairments besides COPD. *See* [Dkt. 13-2 at 29–37; Dkt. 13-

8

2 at 40–50.] "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245. The Seventh Circuit has explained:

> To determine whether an ALJ's development of the record qualifies as "full and fair," we have, in the past, considered a number of factors, including: (1) whether the ALJ obtained all of the claimant's medical and treatment records; *(2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.)*, and (3) whether the ALJ heard testimony from examining or treating physicians.

*Ferguson v. Barnhart*, 67 F. App'x 360, 367 (7th Cir. 2003) (emphasis added) (citing *Binion*, 13 F.3d at 245). The Plaintiff's obligation was to submit evidence regarding the impairment she claimed to have. *See* 20 C.F.R. § 416.912(a) ("We will consider only impairment(s) you say you have or about which we receive evidence."). "Although we have recognized the claimant's obligation to explain why certain conditions are disabling, *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013), it is the ALJ who carries the burden of developing the record, *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009)." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). The ALJ has a duty to consider a claimant's combined impairments, regardless of their severity:

> Although these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, we have frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation.

*Terry*, 580 F.3d at 477 (citing *Villano*, 556 F.3d at 563 (additional citations omitted)). Here, the ALJ did not develop evidence regarding or considering the impairments other than COPD that the Plaintiff had identified through the submission of evidence.

When the Plaintiff applied for benefits, the field office listed her alleged medical conditions as including COPD, depression, anxiety, migraines, and back problems. [Dkt. 13-6 at 7.] In her

9

functional reports, provided at the request of the SSA, she described being limited in her daily activities by shortness of breath and back pain, having problems sleeping, [Dkt. 13-6 at 18], not being able to stand as long as she used to, [Dkt. 13-6 at 19], getting headaches a couple of times a month, sometimes less, lasting two to three hours at a time, causing her to be sick to her stomach, sensitive to light and sound, and to need to lie down and cover her eyes after taking her medication, [Dkt. 13-6 at 26]. The medical records also contained at least some reference to migraines, listed as a current problem, [Dkt. 13-7 at 6], an x-ray of the lumbar spine showing "some narrowing" at L5-S1, [Dkt. 13-7 at 14], and treatment for insomnia and back pain, [Dkt. 13-13 at 9–10; Dkt. 13-15 at 41–42]. While the Plaintiff did not mention any of her other impairments in either short hearing, the documentary evidence regarding other impairments that was provided along with the claim was sufficient to trigger further inquiry by the ALJ. The ALJ did not ask about these impairments specifically, nor did he inquire more generally if there were other conditions that affected the Plaintiff's ability to work. Because the ALJ did not inquire about her other impairments, the Court cannot conclude that the Plaintiff had a fair and full presentation of her claim.

Moreover, the ALJ's written decision did not mention even in passing the Plaintiff's migraines, sleep problems, or back problems. "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry*, 580 F.3d at 477. "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Perhaps the ALJ believed that his adoption of Dr. Rice's medical assessment and/or his evaluation of the Plaintiff's subjective symptoms adequately took into account the Plaintiff's combined impairments. However, the Court is not

10

able to follow the ALJ's logic as to how these specific impairments were determined by the ALJ to have no functional effect on the Plaintiff's capacity for work. On remand, further consideration of the Plaintiff's combined impairments, including the opportunity for relevant testimony, is necessary.

Furthermore, while the Court is satisfied that the ALJ adequately developed the record pertaining to the Plaintiff's COPD, and would not have remanded solely on this basis, not all the Plaintiff's alleged omissions related to the impairment are speculative. The ALJ did not develop the factual record concerning the amount of time it would take the Plaintiff to perform her prescribed breathing treatments. While the Court is not suggesting that the limited breathing treatments would necessarily preclude the Plaintiff from maintaining a competitive work schedule, the record is devoid of both salient facts about the timing and length of her treatments, as well as the ALJ's analysis as to how he determined the treatments would not preclude employment. The Plaintiff should be given additional opportunity to develop these facts on remand. Furthermore, the ALJ's written decision should include his analysis as to how the Plaintiff's breathing treatments and any other alleged limitations from her combined impairments were properly evaluated.

The Plaintiff's further arguments are unavailing. Dr. Rice's opinion provided the logical bridge from the rather normal objective testing to the ALJ's RFC finding. Furthermore, the ALJ did not commit error by failing to rigorously cross-examine the VE about the sufficiency of her methodology used to provide job numbers. That would be more akin to the potential role of a representative than simply an objective fact-finder. There was no indication that the VE's testimony was unreliable. However, the Plaintiff's representative will have an opportunity to raise these issues on remand.

# IV.
## CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

**SO ORDERED.**

Date: 1/29/2019

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Randal S. Forbes
FORBES LAW OFFICE
randy@needsocialsecurity.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Jason Scott Rodman
FORBES LAW OFFICE
jason@needsocialsecurity.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov